IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VALYANT AI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1698 (MN) |
| | ) | |
| KEA CLOUD, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| VALYANT AI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1700 (MN) |
| HI AUTO, INC. and E LA CARTE, INC. | ) | |
| d/b/a PRESTO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS FOR LACK OF PATENTABLE SUBJECT MATTER
<u>PURSUANT TO 35 U.S.C § 101</u>**

OF COUNSEL:

Vincent J. Galluzzo
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 2004
(202) 624-2781

Kainoa Asuega
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
(949) 263-8400

*Attorneys for Defendant Kea Cloud, Inc.*

Guy Yonay
Sarah Benowich
PEARL COHEN ZEDEK LATZER BARATZ LLP
Times Square Tower
7 Times Square
New York, NY  10036
(656) 878-0800

*Attorneys for Defendants Hi Auto, Inc and
E La Carte, Inc. d/b/a Presto*


May 16, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants Kea Cloud, Inc., Hi
Auto, Inc. and E La Carte, Inc. d/b/a Presto*

## Table of Contents

Page

I.     **INTRODUCTION** ................................................................................. 1

II.    **NATURE AND STAGE OF THE PROCEEDINGS** ........................................ 1

III.   **SUMMARY OF ARGUMENT** .......................................................... 1

IV.   **STATEMENT OF FACTS** ................................................................ 3

V.    **LEGAL STANDARD** ...................................................................... 5

VI.   **ARGUMENT** ................................................................................. 6

     A.   Step One: The Claims of the '706 Patent are Directed Towards the Abstract Idea of Taking a Verbal Food Order.................................................................. 6

     B.   Step Two: The '706 Patent Does Not Claim an Inventive Concept ..................... 11

VII.   **CONCLUSION** ............................................................................. 17

**Table of Authorities**

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ............................................................................ *passim*

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ........................................................ *passim*

*Applied Predictive Techs., Inc. v. Marketdial, Inc.*,
    2020 U.S. Dist. LEXIS 221981 (D. Utah Nov. 25, 2020) ................ 3, 15, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 5

*Collaborative Servs. v. Promethius Labs., Inc.*,
    566 U.S. 66 ........................................................................................ 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l
Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ....................................................... 3, 5, 6

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ......................................................... 6

*Elec. Commc'n Techs., LLC v. Shopperschoice.com*,
    958 F.3d 1178 (Fed. Cir. 2020) ......................................................... 3

*ENCO Sys. v. DaVincia, LLC*,
    845 Fed. Appx. 953 (Fed. Cir. Mar. 8, 2021) ................................. 10, 11, 15

*FairWarning IP, LLC v. Iatric Sys. Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ......................................................... 5

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ......................................................... 16

*Kaavo Inc. v. Amazon.com Inc.*,
    323 F. Supp. 3d 630 (D. Del. Jun. 18, 2018) .................................... 15

*Neochloris, Inc. v. Emerson Process Mgmt. LLLP*,
    140 F. Supp. 3d 763 (N. D. Ill. Oct. 13, 2015) ................................ 12, 16

*Northwestern Univ. v. Universal Robots A/S*,
    C.A. No. 20-149 (MN); C.A. No. 21-150 (MN), 2022 U.S. Dist.
    LEXIS 56117 (D. Del. Mar. 28, 2022) ............................................ 6

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)...........................................................................5

*People.AI, Inc. v. SetSail Tech., Inc.*,
    2021 U.S. Dist. LEXIS 237904 (N.D. Cal. Dec. 13, 2021) ...................................15, 16

*Power Analytics Corp. v. Operation Tech., Inc.*,
    2017 U.S. Dist. LEXIS 216875 (C.D. Cal. July 13, 2017) .........................................14

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019)........................................................................10, 14

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019)......................................................................9, 12, 14

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
    78 F. Supp. 3d 884 (N.D. Ill. Jan. 29, 2015)..........................................................11

## Rules and Statutes

35 U.S.C. § 101 .................................................................................... *passim*

## I.    INTRODUCTION

It is not lightly that Defendants bring this motion to dismiss for lack of patent eligibility.  Unlike some Section 101 motions, these cases involve a single patent with two independent method claims (only one of which is asserted in the complaints).  Moreover, that patent is not directed at any technological improvement.  To the contrary, much like the invalid patent in *Apple v. Ameranth*, the patent here is directed to the well-established practice of ordering food at fast-food restaurants by speaking to a computer, rather than directly to a person.  And the patent uses only conventional generic components to communicate the order to a person.  As set forth below, the patent fails both steps of *Alice* as a matter of law.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On December 1, 2021, Valyant AI, Inc. ("Valyant") filed two complaints (D.I. 1 in each case) alleging that Kea Cloud, Inc. ("Kea") and Hi Auto, Inc. ("Hi Auto") directly and indirectly infringed U.S. Patent No. 10,592,706 (the "'706 Patent", or the "Asserted Patent").  On February 9, 2022, Valyant filed first amended complaints against Kea and Hi Auto, and added E La Carte, Inc. d/b/a Presto as a defendant in the Hi Auto case (D.I. 6 in each case, the "FACs").  The FACs assert direct, indirect, and contributory infringement claims.  By these motions, Defendants seek dismissal of both FACs.

## III.    SUMMARY OF ARGUMENT

The claims of the Asserted Patent are not patent-eligible under 35 U.S.C. § 101 and the two-part test of *Alice* for the same reasons as held for a similar patent in *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016).

First, the claims fail at *Alice* Step One because they are directed to the abstract idea of taking a food order, which is and has historically been primarily conducted verbally. (*See* FAC at ¶9). This basic idea—of verbally ordering food—is so embedded in daily life that there are songs, television shows, and other popular culture references to taking verbal food orders, and even to the specific phrase found throughout the '706 Patent, *"do you want fries with that?"*[1] The '706 Patent purports merely to automate this basic practice by replacing one person in that prototypical transaction, *i.e.*, "replacing an employee" with a computer. Thus, the patent describes an automated speech system (rather than a human)— trained by humans—that asks whether, for example, the customer would like fries with that. (Col. 13:49-50).

Second, the claims of the '706 Patent fail at *Alice* Step Two because they rely on generic hardware, and the steps follow the only possible sequence for ordering food, i.e., first the customer orders food, and then the order is placed. The '706 Patent has no saving inventive concept. It merely implements the abstract idea in a conventional order using generic hardware and software.

---

[1] *See, e.g.,* Tiffanie Boyd, "The best first jobs teach workers these skills" (Fortune, Aug. 5, 2021) available at: https://fortune.com/2021/08/05/careers-best-first-jobs-soft-skills-mcdonalds-community-colleges/ ("The Workforce Survey identified three categories of soft skills that employees believe a first job must teach. First is responsibility—everything from understanding the importance of being on time, to completing all the duties associated with a job, to being accountable for results. Second is teamwork—including skills like collaboration, problem solving, and effective and clear communication. Third is responsiveness—actively listening to colleagues or customers, staying focused, and acting quickly and thoroughly to deliver meaningful results."); *Fries with That?* (a sitcom centered on a local fast-food restaurant named "Bulky's" in Montreal, Canada); Tim McGraw (2004) Song – *Do You Want Fries with That?* (Oh I almost forgot // Do you want fries with that? // Your ketchup's in the bag // And a check is in the mail // I hope your chicken's raw inside // And I hope your bun is stale // I'm supposed to tell you 'Please come back'").

Because the claims of the Asserted Patent are directed to an abstract idea without any unconventional steps or hardware, they are patent-ineligible under 35 U.S.C. § 101. Accordingly, Valyant has failed to state a claim upon which relief can be granted. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014).

## IV.    STATEMENT OF FACTS

The '706 Patent, which claims priority to a 2017 application, says that it is generally related to:

> "facilitat[ing] the *automated operation* of the *ordering function* of a drive-through restaurant, fast food restaurant or other business establishment *by replacing an employee* or other means of capturing order data *with an ordering system employing a highly accurate speech recognition component* that is able to be trained to recognize a wide vocabulary of words, and associate tones and other metadata in a manner not previously achieved in speech-to-text systems."

*See* Abstract (emphases added).  In short, by its own terms, the patent is directed to "systems to facilitate the ordering or selection of products or services by a customer using natural language." *See* Col. 1:16-21.

The '706 Patent itself purports to claim methods to replace human behavior (*i.e.*, taking a customer's order) using generic hardware and even "manual input." (*See* Fig. 2.) Indeed, if the system is not "switched on," the "[o]rder [will be] handled by [the] on-site [human] employee" indicating that all functions of the invention can be and typically are handled by humans.  (*See* Fig. 5.)  This is a hallmark of patent-ineligibility.  *See, e.g.*, *Elec. Commc'n Techs., LLC v. Shopperschoice.com*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) ("Claims […] that are directed to longstanding commercial practices do not pass step one of the two-part § 101 test."); *Applied Predictive Techs., Inc. v. Marketdial, Inc.*, 2020 U.S.

Dist. LEXIS 221981 (D. Utah Nov. 25, 2020) (claims applying artificial intelligence to "help[] retailers optimize the parameters for their business initiative tests" were abstract and directed towards patent-ineligible subject matter because "just because a computer can make calculations more quickly than a human does not render a method patent eligible").

The '706 Patent refers only to generic hardware implementing a conventional combination and/or ordering of steps, just as a human traditionally would (*i.e.*, taking the order and *then* processing and releasing the ordered items to the customer, rather than the illogical inverse ordering of those steps):

> "The process begins when the customer engages the *restaurant's order processing system*, be that an *employee taking an order* or, more recently, interacting with a *touch screen system* or other *touch-activated physical interface* to make order selections."

*See* Col. 1:60-64.

The '706 Patent has two independent claims, claims 1 and 4, both of which are method claims. Although the FAC alleges that "at least Claim 1 of the '706 Patent" is infringed, Valyant addresses only claim 1 in both the FACs and their attached claim charts. (*See* FAC and D.I. 6-2). Accordingly, claim 1, reproduced below, is representative of the remaining claims:

1. "A method comprising the steps of:
   providing an audio stream of an order of a customer positioned on a site;
   providing an order processor having a speech recognition module trained using artificial intelligence programs;
   converting a word or words in the audio stream to text using the speech recognition module;
   processing the text communication with the speech recognition module to identify a word or words in the text of the converted audio stream according to a previous spoken word training;
   providing a natural language processor having order assembly capabilities and exception detection capabilities, wherein the natural language processor receives recognized text

> from the order processor and creates or modifies an order
> based upon the recognized text;
> generating an order with the natural language processor;
> alerting an auditor of detected exceptions in the order, the
> auditor located off-site and connected to the order
> processor via a data connection;
> deactivating the order processor with the auditor in response to
> the detected exceptions in the order; and
> prompting an on-site employee to engage the customer and
> complete the order."

## V.  LEGAL STANDARD

Abstract ideas are not patent eligible under 35 U.S.C. § 101.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  "Patent eligibility under 35 U.S.C. § 101 is an issue of law."  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).  Accordingly, "[i]n many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."  *FairWarning IP, LLC v. Iatric Sys. Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016); *see also Content Extraction*, 776 F.3d at 1343.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In *Alice*, the Supreme Court set forth a two-step test for "distinguishing patents that claim [...] abstract ideas from those that claim patent-eligible applications of those concepts."  573 U.S. at 217 (internal citations and quotations omitted).  Subject matter eligibility under § 101 serves as an important check on the scope of the patent monopoly by preventing patentees from capturing a "building block[] of human ingenuity," "a method of organizing human activity," an "abstract idea," "an algorithm," or a similar foundational concept.  *See id*. at 216-217.  The doctrine exists to prevent the patent laws from "inhibit[ing] further discovery by improperly tying up the future use of these building blocks of human ingenuity."  *See id*. at 217.  The Court need not address "each claim of

the asserted patents" when, as here, "all the claims are 'substantially similar and linked to the same abstract idea.'" *See Content Extraction*, 776 F.3d at 1348.

First, at Step One, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, 'the claims satisfy § 101 and [the Court] need not proceed to the second step.' *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an 'inventive concept' – *i.e.*, 'an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.' *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo* [*Collaborative Servs. v. Promethius Labs., Inc.*, 566 U.S. 66 [,] 72-73 [(2012)])." *See Northwestern Univ. v. Universal Robots A/S*, C.A. No. 20-149 (MN); C.A. No. 21-150 (MN), 2022 U.S. Dist. LEXIS 56117, at *4-5 (D. Del. Mar. 28, 2022) (internal quotation marks omitted).

## VI. ARGUMENT

Claim 1, which is representative of all claims of the '706 Patent, is directed towards patent-ineligible subject matter.

### A. Step One: The Claims of the '706 Patent are Directed Towards the Abstract Idea of Taking a Verbal Food Order.

The claims of the '706 Patent fail at *Alice* Step One because they are directed to the abstract and age-old idea of taking a verbal food order.

The claimed method begins with the step of: "providing an audio stream of an order of a customer positioned on a site." *See* '706 Patent, Claim 1. This is little more than the conventional act of communicating a food order via customer speech. *See* '706 Patent,

Col. 1:54-64 ("The process begins when the customer engages the restaurant's order processing system, *be that an employee taking an order* or, more recently, interacting with a touch screen system or other touch-activated physical interface to make order selections").

The claim includes additional steps of:

- "providing an order processor having a speech recognition module …,"

- "converting a word or words in the audio stream to text using the speech recognition module,"

- "processing the text communication with the speech recognition module to identify a word or words in the text …," and

- "providing a natural language processor having order assembly capabilities …, wherein the natural language processor receives recognized text from the order processor and creates or modifies an order based upon the recognized text."

*See* '706 Patent, Claim 1. These additional steps merely describe identifying the food order from the customer speech via well-known, conventional speech recognition and natural language processing techniques recited at a high level of generality. *See* '706 Patent, Col. 1:25-27 ("Speech recognition systems are systems that utilize a machine to identify words or phrases in spoken language and convert them into machine readable text or instructions"); Col. 2:16-17 (noting word recognition issues with existing "speech-based natural language ordering systems").

The claim concludes with the steps of:

- "alerting an auditor of detected exceptions in the order,"

- "deactivating the order processor with the auditor in response to the detected exceptions in the order," and

- "prompting an on-site employee to engage the customer and complete the order."

*See* '706 Patent, Claim 1. These final steps also describe conventional activity that is part-and-parcel of conventional food ordering: order-taking quality control and execution. *See* '706 Patent, Col. 13:33-40 ("If the auditor 71 detects that the artificially intelligent order processing system 10 is not functioning properly, or that the customer 25 is frustrated or otherwise not being adequately served by the artificially intelligent order processing system 10, then the auditor 71 can abort, or intervene in, the transaction and pass control back to the on-site employee 81…"). For example, it has long been the case in restaurants that, if a waiter has trouble taking a customer's food order, a supervisor can intervene to assist or replace that waiter. More specifically, in the drive-through context (to which the Asserted Patent is directed), it is conventional that multiple restaurant employees wear headsets and concurrently listen in on every order, so that when an employee (e.g., a trainee) encounters an issue taking the order, a manager can jump in seamlessly and handle the order.

The claimed method is thus a conventional food order taking process—albeit via a computer in lieu of a human waiter. *See* '706 Patent, Col. 5:39-53 ("The preferred embodiment *facilitates the automated operation of the ordering function* of a drive-thru restaurant, fast food restaurant or other business establishment, *by replacing an employee or other means of capturing order data with an ordering system employing a highly accurate speech recognition component*.") (emphasis added); Col. 7:29-34 ("In the auditor assist mode, the *on-site employee is removed from the traditional order processing functions* and serves only as a back-up to take over the artificially intelligent order processing system upon the incidence of an error or when the artificially intelligent order processing system is switched off by and administrator or auditor.") (emphasis added).

The Federal Circuit has squarely held that the process of taking customers' food orders via a computer is a patent-ineligible abstract idea. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-41 (Fed. Cir. 2016). In *Apple*, the Federal Circuit held that claims relevant to restaurant and food-ordering contexts, which "could be described […] as […] taking orders from restaurant customers on a computer" and conducted on generic hardware and commonly known software, were directed to patent-ineligible subject matter. *See* 842 F.3d at 1241-1243. The court explained that, "[t]he preferred embodiment of the claimed invention described in the specifications is a *restaurant preparing a device that can be used by a server taking orders from a customer*. The claimed invention *replaces a server's notepad or mental list* with an electronic device programmed to allow menu items to be selected as a customer places an order." *See id.* (internal citations omitted; emphases added). "The specifications note that 'ordering prepared foods has historically been done verbally, either directly to a waiter or over the telephone, whereupon the placed order is recorded on paper by the recipient or instantly filled.'" *See id.* at 1235.

Similarly, the '706 Patent describes taking food orders from restaurant customers via a computer (i.e., the order processing system). The customer speech is provided to and analyzed by the computer to identify the order for processing. *Supra*. As for the order taking quality control steps, those literally recite the age-old human behavior being done by a *human* auditor—not the computer. *See*, *e.g.*, '706 Patent, FIG. 3 (illustrating the *human* auditor 71).

Patents are regularly found to be directed to abstract ideas when they describe common commercial practices long performed by humans, even if those are claimed to be performed by a computer. *See e.g., Apple, Inc.*, *supra* (food order taking); *Trading Techs.*

9

*Int'l, Inc. v. IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019) (facilitating the placement of an order for an item and displaying transactional information to a user); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168-69 (Fed. Cir. 2019) (crediting a merchant's account as soon as possible); *ENCO Sys. v. DaVincia, LLC*, 845 Fed. Appx. 953 (Fed. Cir. Mar. 8, 2021) cert. denied, 2021 U.S. LEXIS 5446 (Nov. 1, 2021) (automating the AV-captioning process).

In the event Valyant argues that the other independent claim, claim 4, is representative, the above analysis applies with equal force. The only substantive difference between claims 1 and 4 is that claim 4 elaborates on how an "exception" is generated, but this too is directed to a patent-ineligible concept. Specifically, claim 4 states that a human auditor hears the audio stream of the customer order, and compares it with the food order generated by the computer. If the auditor detects errors in the computer-generated order, he or she updates the processor to correct the errors. Supervising and correcting a computer (or a trainee waiter) is an abstract idea and not patent-eligible. Claim 4 also includes a non-substantive elaboration on the last step of prompting the on-site employee to complete the transaction: "transmitting the generated order to an on-site employee to communicate with the customer, to collect payment from the customer, and to provide notifications to release the ordered product or service to the customer." This conventional order-taking is also not patent-eligible.

Likewise, none of the dependent claims in the '706 Patent change the analysis. Processing the order in real time (claim 2) is something done in human-to-human food ordering; prompting the human assistant to switch the order processor to an assisted mode (claims 3 and 9) is akin to a restaurant manager telling a seasoned waiter or waitress to take

over from a trainee; claims 5, 6, and 8 relate to additional features of human order-taking, such as asking customers if they want other items; claim 7 is directed only to typical quality control done by a manager or other waitstaff; and claims 10 and 11 are simply what happens when the waitstaff stops taking a customer's order because the customer left the restaurant or because there is a shift change.

The '706 Patent, including both of its independent and all of its dependent claims, is therefore directed to the abstract idea of taking a verbal food order—a fundamental business practice that is not patent-eligible under *Alice*. The '706 Patent thus fails *Alice* Step One.

B. <u>Step Two: The '706 Patent Does Not Claim an Inventive Concept</u>

Claim 1 of the '706 Patent also fails at Step Two because it only adds "conventional computer components to well-known business practices. […] The Supreme Court and [the Federal Circuit] have repeatedly determined that such claims are invalid under § 101." *See Apple*, 842 F.3d at 1229, 1242-43 (internal citations omitted.); *see ENCO*, 845 Fed. Appx. at 958 (holding claims lacked inventive concept where "[t]he specification, [regarding] the audio-to-text conversion, explains that 'conventional' components and techniques can be used."); *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 78 F. Supp. 3d 884, 890-91 (N.D. Ill. Jan. 29, 2015) (claims directed to screening for substance impairment failed Step Two where the patent "perform[ed] the otherwise conventional steps of screening for impairment" and did "not require that the expert system be programmed to perform the function in any specific way").

As in *Apple*, the '706 Patent provides no inventive ordering method and only adds conventional computer components to an age-old human process of taking verbal food

orders.  *See Apple*, 842 F.3d at 1242-43; *see also Trading Technologies*, 921 F.3d at 1089-90 (claims failed Step Two where they did not improve computer functionality but rather relied on generic hardware and software to make human transactions more efficient).

The '706 Patent does not suggest (nor do the FACs allege) that Valyant "invented," created, or optimized a new system of AI/NLP (i.e., artificial intelligence/natural language processing).  Nor does anything explain "why these advanced functions are inventive."  *See Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, 140 F. Supp. 3d 763, 773-774 (N. D. Ill. Oct. 13, 2015) ("A computer can more quickly and accurately solve the various forms of Bernoulli's equation, but using a computer to that does not add an inventive concept to the fundamental truth of that mathematical equation.").

To the contrary, the '706 Patent affirms that applying well-known AI and NLP systems brings expected benefits in the fast-food context—this is not an inventive concept. That is, the '706 Patent claims "do not claim a particular way of programming or designing the software […] but instead merely claim the resulting systems."  *See Apple*, 842 F.3d at 1241.  Indeed, the '706 Patent states that the employed protocols and methods are known, and that the patent does not claim any new speech recognition or natural language processing techniques, but instead only applies *known* systems to the food-ordering context—in order to make food ordering purportedly more efficient by using generic hardware, which, the specification admits are already in use in fast-food and other operations.  *See, e.g.*, '706 Patent, Col. 3:13-15 ("a speech-to-text processor *as well known to those skilled in the art* is utilized to achieve transcription"); Col. 14:16-21 ("In a similar manner, and in conjunction with *technology currently available* to recognize the identity of a customer and track their preferences with regard to past orders, the artificially

intelligent order processing system *could query* the customer to determine if those past selections should be added to their current order.").

The claims of the '706 Patent do not purport to improve the underlying computer functionality or voice-to-text or AI systems, but instead simply disclose methods of applying those known systems to the food-ordering context to make it more efficient,  in ways that humans already do in their natural capacities.  Examples of mimicking human behavior abound in the Asserted Patent:

- "The audio greeting can be as simple as saying 'Hello. May I take your order?'"  *See* Cols. 8-9:67-1.

- "…when the text comprises "I want a cheeseburger.", or some similar statement, is sent to the NLP 51, an instruction set adding one cheeseburger to the order is generated, representing the intent of the order."  *See* Col., 13: 19-23.

- "(1) reviewing an order by an [human] *auditor* by comparing the order generated by the natural language processor to the communication in the audio stream and (2) updating the order based upon auditor review."  *See* Col. 5:21-25.

- "An additional feature of the proposed systems is its ability to *effectively promote sales in a manner analogous a human cashier. Customers interacting with fast food employees are well-accustomed to the standard up-selling phrase 'would you like to make it a combo?'  The present inventor has recognized that this particular phrase and variants are used so commonly because it is effective in increasing sales, and thereby is a teaching of an embodiment of the system*."  *See* Col. 13:58-66.

- "For example, if the customer 25 ordered a cheeseburger, the instruction set for the business processor would be to output the text *'would you like fries and a drink with that?'*  The text would be sent to text-to-speech module 42 and then the on-site computer 31, which will output the audio to the base station 80 and then out to the speaker 22."  *See* Col. 13:47-55.

- "If the [human] auditor 71 detects that the artificially intelligent order processing system 10 is not functioning properly, or that the customer 25 is frustrated or otherwise not being adequately served by the artificially intelligent order processing system 10, then *the auditor 71 can abort, or*

13

*intervene in, the transaction and pass control back to the on-site employee 81 …*"  *See* Col. 13:33-43.

In short, the '706 Patent simply applies known techniques to achieve the benefit of a (purportedly) more efficient food-ordering process by "replacing an employee" with the computer that does the order taking.  *Id*., Col. 5:45-53.  In other words, the '706 Patent "simply makes the [waiter] faster and more efficient, not the computer [by which the order is taken]."  *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1088 (Fed. Cir. 2019) (affirming that claims related to "[a] computer based method for facilitating the placement of an order for an item and for displaying transactional information to a user" were patent-ineligible as being directed to a covered business method and a fundamental business practice carried out on generic computers); *Power Analytics Corp. v. Operation Tech., Inc.*, 2017 U.S. Dist. LEXIS 216875, at *15 (C.D. Cal. July 13, 2017) (claims reciting a "machine learning engine" were ineligible where that term was described in functional terms without purporting to add any particular inventive implementation and or describe anything other than "desired functions or outcomes.")

The fact that the claims do not cover any improvements to computer functionality or technology is a strong indicator that the '706 Patent is "not a technical solution to a technical problem," but is rather directed to an abstract idea.  *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1088 (Fed. Cir. 2019). *See also Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168-69 (Fed. Cir. 2019) (holding patent ineligible claims directed towards applying computer technology to making known commercial transactions easier, faster, more convenient, or less expensive to execute on "[t]he desire to credit a merchant's account as soon as possible is an equally long-standing commercial practice" which had no specific improvements to computer functionality).

14

Adding the AI and NLP elements does not render the claims patent eligible, where, as here, the AI and NLP elements are broadly claimed and directed only toward automating classic commercial transactions. *See ENCO Sys. v. DaVincia, LLC*, 845 Fed. Appx. 953 (Fed. Cir. Mar. 8, 2021), *cert. denied,* 2021 U.S. LEXIS 5446 (Nov. 1, 2021) ("The claims [directed to the "abstract idea of automating the AV-captioning process"] do not incorporate anything more beyond conventional computing hardware and software, which do not transform the subject matter into an eligible application of the abstract idea.").

Courts in this District and elsewhere have held similar mere automation patents to be directed toward patent-ineligible abstract ideas when they do no more than apply AI and/or NLP elements to "common commercial practice[s] long performed by humans." *See, e.g., People.AI, Inc. v. SetSail Tech., Inc.*, 2021 U.S. Dist. LEXIS 237904, at *12-13 (N.D. Cal. Dec. 13, 2021) ("The asserted claims […] do little else than recite a common commercial practice long performed by humans. In fact, the specification explains how the [asserted] patent addresses the 'challenges of manually entering data' […] And limiting the claims to a particular technological environment […] renders them no less abstract."); *Applied Predictive Techs.*, 2020 U.S. Dist. LEXIS 221981, at *27 (claims lacked AI-specific limitations and were instead "directed to the abstract concept of optimizing parameters for business initiative testing"); *Kaavo Inc. v. Amazon.com Inc.*, 323 F. Supp. 3d 630, 642 (D. Del. Jun. 18, 2018) (holding claims abstract and patent-ineligible where certain where the "claim language [did] not require the use of these [AI] modules.").

Finally, the purported benefits of efficiency and accuracy—which are inherent to the computer automation itself (*see* col. 1:50-51, 58-60)— cannot provide an inventive concept. "[T]he law of Federal Circuit is clear on this point: '[T]he improved speed or

efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept,'" and does "not generate a factual dispute". *See People.AI, Inc.*, 2021 U.S. Dist. LEXIS 237904, at *23-24 (quoting *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016)). Even assuming that implementing the '706 Patent did increase efficiency and accuracy, the ability to "more quickly and accurately" conduct business does not support finding an inventive concept. *See Neochloris*, 140 F. Supp. 3d at 773-74 (claims reciting "an artificial neural network module," failed Step Two: "A computer can more quickly and accurately solve the various forms of Bernoulli's equation, but using a computer to that does not add an inventive concept to the fundamental truth of that mathematical equation."). And, "[n]one of the remaining claims provide[s] further information about the software, hardware, or firmware used to implement the claimed invention." *See Applied Predictive Techs.*, 2020 U.S. Dist. LEXIS 221981, at *33-34.

Nor do any of the other claims recite an inventive concept. As discussed above, claim 4 merely describes the conventional manner of a human auditor identifying errors in the computer-generated order. The dependent claims likewise fail to provide any inventive technical concept, and, as discussed above, all describe or mirror purely human actions common in the restaurant industry. Claim 2 (order is processed in real time), claim 3 (auditor switches the processor from autonomous to auditor-assist mode), claim 5 (processor queries customer for additional order items, e.g., fries); claims 6 and 8 (text-to-speech to communicate with customer), claim 7 (human auditor updates order based on comparing computer-generated order to audio stream), claim 9 (allowing auditor override),

claims 10 and 11 (auditor deactivates processor based on change in customer traffic or restaurant staffing) are all conventional and non-inventive.

Accordingly, the '706 Patent has no saving inventive concept because the additional limitations only serve to implement the abstract idea in a conventional order using generic hardware and software. It is simply "not enough [for the '706 Patent] to point to conventional applications and say 'do it on a computer.'" *Apple*, 842 F.3d at 1243, citing *Alice*, 134 S. Ct. at 2358. The '706 Patent thus also fails *Alice* Step Two.

## VII.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be granted and Valyant's FACs dismissed with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants Kea Cloud, Inc., Hi Auto, Inc. and E La Carte, Inc. d/b/a Presto*

OF COUNSEL:

Vincent J. Galluzzo
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 2004
(202) 624-2781

Kainoa Asuega
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
(949) 263-8400

*Attorneys for Defendant Kea Cloud, Inc.*

Guy Yonay
Sarah Benowich
PEARL COHEN ZEDEK LATZER BARATZ LLP
Times Square Tower
7 Times Square
New York, NY  10036
(656) 878-0800

*Attorneys for Defendants Hi Auto, Inc and E La Carte, Inc. d/b/a Presto*

May 16, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 16, 2022, upon the following in the manner indicated:

Andrew C. Mayo, Esquire                     *VIA ELECTRONIC MAIL*
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
*Attorneys for Plaintiff*

Richard D. Rochford, Esquire                *VIA ELECTRONIC MAIL*
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY  10112
*Attorneys for Plaintiff*

Stephanie N. Sivinski, Esquire              *VIA ELECTRONIC MAIL*
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX  75219-7672
*Attorneys for Plaintiff*

Alexander B. Lutzky, Esquire                *VIA ELECTRONIC MAIL*
HAYNES AND BOONE, LLP
112 East Pecan Street, Suite 1200
San Antonio, TX  78205
*Attorneys for Plaintiff*


*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)